UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JEROME ROBINSON-SMITH, et al., ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. 01-1340 (PLF) |
| GOVERNMENT EMPLOYEES ) INSURANCE COMPANY, ) | |
| Defendant. ) | |

OPINION AND ORDER

This matter is before the Court on plaintiffs' motion to file consents untimely and toll the statute of limitations. Plaintiffs move to file the notices of consent of four potential claimants in the collective action brought by the named plaintiff and other persons against defendant under the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 201 et seq. Plaintiffs further move that the statute of limitations be equitably tolled so that these consents are considered filed as of the dates that each was signed. Upon consideration of plaintiffs' motion, defendant's opposition, and plaintiffs' reply, the Court concludes that plaintiffs' motion will be granted with respect to the filing of the consents, but must be denied with respect to the issue of equitable tolling.

I. BACKGROUND

This lawsuit was filed on June 15, 2001, by named plaintiff Jerome Robinson-Smith. Under the FLSA, an employee may bring an action on behalf of himself and other employees similarly situated within two years of when the action accrued or, in the case of a

willful violation, within three years. 29 U.S.C. §§ 216(b), 255. Persons wishing to join an FLSA collective action must affirmatively opt in to the suit by filing a notice of consent. Under the statute, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). For each plaintiff who opts in to the case after the filing of the complaint, the action is not considered commenced for purposes of the statute of limitations until the date on which the plaintiff's written consent is filed with the court. 29 U.S.C. § 256; see also 29 U.S.C. § 255(a).

In a November 16, 2001 Memorandum Opinion and Order, this Court directed the defendant to turn over to the named plaintiff the names and mailing addresses of potential members of the collective action, so that the plaintiff could provide such persons with notice of the lawsuit and their right to participate as a member of the suit. At that time, the Court set March 1, 2002 as the deadline by which the Court must receive Notices of Consent from those persons wishing to join the collective action. The Court extended this deadline to April 1, 2002 in an Order issued on January 14, 2002. Between November 16, 2001 and April 1, 2002, plaintiffs' counsel submitted 272 Notices of Consent to join in the collective action filed by Mr. Robinson-Smith.[1]

On May 2, 2005, the plaintiffs filed a motion to file consents untimely and toll the statute of limitations. Specifically, the plaintiffs ask the Court to accept the consents of Lewis Nettles, John Surine, Matthew Chaney, and Jeffrey Jones and to toll the statute of limitations under the FLSA so that the consents are treated as timely filed as of the dates they were signed.

---

[1]   Three of these consents were later withdrawn, leaving 269 opt-in plaintiffs.

The declaration of plaintiffs' counsel, Charles E. Tompkins, appended to the motion, explains that these four Notices of Consent were timely mailed to counsel's office, but not filed with the Court. According to Mr. Tompkins, he first became aware of a possible problem with the consents in October 2004 when he and defense counsel compared lists of collective action members and found that the lists did not match. Mr. Tompkins then directed a paralegal to investigate the problem. Upon review of the Court's record of consents filed, plaintiffs' counsel found that the consents for Mr. Nettles, Mr. Surine, Mr. Chaney, and Mr. Jones had not been filed with the Court. Mr. Tompkins describes in his declaration the protocol his firm had created for ensuring that all consents sent to them by collective action members were filed, but he is unable to explain how the error occurred. He describes it as "a clerical error on the part of [his firm]." Declaration of Charles Tompkins in Support of Motion for Tolling ¶ 9.

## II.  ANALYSIS

### A.  Tolling the Statute of Limitations

Plaintiffs argue that the four opt-in collective action members who mailed their Notices of Consent to counsel in a timely manner should not be held responsible for counsel's failure to file them. They ask that the Court toll the statute of limitations for the Notices of Consent "from the date [the four individuals with unfiled consents] intended to join this action." Pls' Mot. at 3. Their arguments fall into two categories. First, plaintiffs maintain that the collective action members should not be bound by the acts of their counsel because they did not "select their attorneys in any meaningful sense." Id. at 3; see id. at 9-10. They further maintain that "participation in this collective action, where the attorneys already had been chosen, was the only practical means available to these class members to vindicate their rights under the Fair

Labor Standards Act." Id. at 3. Second, plaintiffs argue more generally that the nature of the error, including the fact that it was counsel's error, weighs in favor of equitable tolling. Id. at 5-7. In addition to the fact that the error was counsel's and not the four individuals in question, plaintiffs argue that because the four individuals diligently pursued their claims, the error was a good faith mistake, the effect of not tolling would be unduly punitive on the individuals, and defendant would not be substantially prejudiced by the tolling. Thus, they maintain the Court should toll the statute of limitations and accept the consents as timely filed. Id. at 5-8.

1. Client Accountability for Counsel's Actions

Clients generally are presumed to be accountable for and bound by their attorneys' conduct. Link v. Wabash Railroad Co., 370 U.S. 626, 633-34 (1962) (client cannot avoid consequences of attorney's acts or omissions as client's freely selected agent). This presumption of client accountability holds true even in Rule 23 class actions. See Pigford v. Veneman, 292 F.3d 918, 926 (D.C. Cir. 2002). The presumption is more easily rebutted where clients have not "voluntarily chosen" their attorneys, as is the case with Rule 23 class action members who have not chosen their class counsel. Id.

Relying on Pigford v. Veneman, 292 F.3d 918 (D.C. Cir. 2002), plaintiffs argue that the four opt-in individuals whose consents were not filed should not be held accountable for their actions. This reliance is misplaced. Unlike the opt-out Rule 23 class members in Pigford, who were effectively stuck with appointed class counsel whom the Court already had found were competent and would adequately protect the interest of the class, the opt-in plaintiffs in this FLSA action voluntarily chose their own counsel by responding to the notice sent to them with their consents, and thereby agreeing to participate in this lawsuit with this counsel.

Compare Pigford v. Veneman, 292 F.3d at 926.  While the Pigford class members were "technically" permitted to retain other counsel for the purposes of pursuing their claims under the consent decree entered in that case, the court of appeals held that "the circumstances of this case, together with the terms of the decree itself, [made] such choices unlikely."  Id.  The class member's choice of counsel in Pigford was constrained by the fact that class counsel had received an advance fee to provide services for class members pursuing their claims under the consent decree, while all other lawyers who entered the case not only would have had to seek fees for their work, but in Pigford were actually prohibited from charging the clients directly.  Id.  The circumstances of the instant case are not so constraining, and the Court can find no reason why the collective action members here would not have been free to choose alternate counsel or pursue their claims in another suit.

>　According to plaintiffs, this lawsuit was "the only practical means . . . to vindicate their rights under the Fair Labor Standards Act."  Pls' Mot. at 3.  In support of this claim, plaintiffs assert that "the Supreme Court and this Court have recognized [that] the costs to plaintiffs of pursuing individual claims is often prohibitive in a FLSA lawsuit, making collective action the only realistic option."  Pls' Mot. at 10 (citing Memorandum Opinion and Order of November 16, 2001 at 2 (citing Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 170 (1989))).  This simply is not true.  First, an FLSA collective action, unlike the Rule 23 class action at issue in Pigford, does not bind those who did not opt in to its judgment.  29 U.S.C. §§ 216(b), 256; see also Harkins v. Riverboat Services, Inc., 385 F.3d 1099, 1101 (7th Cir. 2004);  Partlow v. Jewish Orphans' Home of Southern California, Inc., 645 F.2d 757, 759 (9th Cir. 1981), abrogated on other grounds by Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989).  Nor

5

is there any reason why they cannot bring a separate lawsuit.  There is no legal reason therefore why any potential collective action members need join this particular suit in order to vindicate their rights.

Second, plaintiffs have misunderstood the import of both this Court's November 16, 2001 Memorandum Opinion and the Supreme Court's opinion in <u>Hoffmann-La Roche, Inc. v. Sperling</u>, 493 U.S. 165 (1989), and overstated the importance of this collective action on a potential member's ability to bring suit.  Citing <u>Hoffmann-La Roche</u>, this Court merely recognized that collective actions under the FLSA "offer important benefits to plaintiffs and to the judicial system, including lower individual costs to potential plaintiffs by permitting them to pool their resources and the efficient resolution in one proceeding of common issues of law and fact."  Memorandum Opinion and Order of November 16, 2001 at 2 (<u>citing</u> <u>Hoffmann-La Roche</u>, 493 U.S. at 170).  Neither this Court nor the Supreme Court have held or suggested that an FLSA collective action is "the only realistic option" due to the "prohibitive" costs of pursuing individual claims.  Rather, it is a beneficial option for both the courts and plaintiffs where employed.

All of the potential collective action members in this case were free to press their rights individually or collectively in a separate action from this one.  Indeed, plaintiffs themselves have made exactly this point in a previous filing with the Court in this case.  On April 12, 2002, plaintiffs opposed a motion by potential collective action member Edward Walls to intervene and file a Rule 23 class action complaint, adding additional claims under the laws of 49 states and the District of Columbia.  Arguing that allowing Mr. Walls to intervene would be prejudicial to the pending FLSA claims and unnecessary for Mr. Walls, who could pursue his

claims elsewhere, plaintiffs stated in their opposition that "Walls is free to retain counsel to advise him with respect to his own FLSA claim." Plaintiff's Opposition to the Motion of Edward Walls to Intervene at 2. Plaintiffs were correct that potential collective action members are free to consult and retain any counsel that they please, just as they were free to join or to refrain from joining the instant action. This was no more true for Mr. Walls than it is for the four persons whose consents were mistakenly not filed by counsel. Plaintiffs have not shown that their clients' choice of counsel was anything but voluntary, and therefore cannot overcome the presumption of client accountability for their attorney-agent's action (or inaction) in overlooking their consents and failing to file them.

2. Principles of Equitable Tolling

Equitable tolling of statutory periods is "typically extended . . . only sparingly." Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990). A statute of limitations is "primarily designed to assure fairness to defendants." Burnett v. New York Central Railroad Co., 380 U.S. 424, 428 (1965). It may be tolled, however, in cases where "the interests of justice require vindication of the plaintiff's rights." Id. Such cases include ones where a party has been misled by its adversary to miss a filing deadline, where a claimant has actively pursued its rights by filing a defective pleading within the deadline, and where a plaintiff was prevented from bringing suit by war. Id. at 428-29 (citations omitted); Irwin v. Department of Veterans Affairs, 498 U.S. at 96 (citations omitted). Conversely, the Supreme Court "been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." Irwin v. Department of Veterans Affairs, 498 U.S. at 96 (citation omitted). Finally, the

7

Court has held that "[t]he principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect." Id.

Plaintiffs argue that the Court should toll the statute of limitations because (1) the claimants pursued their claims diligently by mailing their consents to counsel; (2) the effect of failure to toll would have "severe repercussions," that is, it would bar totally one individual's claim and the majority of the other three individuals' claims; (3) the error was a good faith mistake; and (4) the defendant will not be substantially prejudiced by the tolling. Pls.' Mot. at 5-8. They rely heavily on the Ninth Circuit's opinion in Partlow v. Jewish Orphans' Home of Southern California, Inc., 645 F.2d 757, 759 (9th Cir. 1981), abrogated on other grounds by Hoffmann-La Roche, Inc. v. Sperling, 493 U.S. 165 (1989). The defendant argues, correctly, that Partlow is distinguishable from this case in that it involved a situation where the district court tolled the statute of limitations and allowed the potential collective action members to refile their consents after finding that the initial consents, although timely filed, were improperly solicited by the plaintiffs' counsel. 645 F.2d at 758. Although the consents were improperly filed, the defendant in Partlow had notice of those particular consents all along. Thus, Partlow fits exactly the situation in which a plaintiff has actively pursued its rights but filed a defective pleading, specifically cited by the Supreme Court as one instance where equitable tolling of the statutory period is appropriate. Irwin v. Department of Veterans Affairs, 498 U.S. at 96 (citations omitted). Here, the Court cannot say that these four plaintiffs have "actively pursued [their] judicial remedies" because their attorneys, as their agents, have not done so on their behalf. Id.

As unfortunate as this situation may be, it appears to fall into the category deemed by the Supreme Court in Irwin v. Department of Veterans Affairs as one to which equitable

tolling principles do not extend. In Irwin, an attorney who received a letter with a notice of right to sue from the Equal Employment Opportunity Commission failed to file suit on his client's behalf within the 30 days given under the statute. 498 U.S. at 90-91. The attorney argued that the letter was not received until his client had personally received the letter. Id. The Supreme Court rejected the argument, holding that the client was bound by his attorney's inaction. The attorney further argued that the letter arrived at his office while he was out of the country and that he had filed within 30 days of when he, personally, received it. Id. at 93. The Supreme Court rejected this argument as well and deemed the case "at best a garden variety claim of excusable neglect." Id. at 92-93.

   Plaintiffs' counsel in this case neglected to ensure that all consents had been filed by reconciling the records of filings kept by the firm and the actual filings made to the Court. The Court does not doubt counsels' assertion that the mistake was made in good faith, and it certainly recognizes the consequences to the faultless individuals who mailed their consents in a timely fashion to counsel. This does not, however, negate counsel's failure to abide by either the deadline set in this case or, more importantly, the statute of limitations. Counsel's error was exactly the sort to which the Supreme Court has refused to apply equitable tolling.

   As for plaintiffs' argument that the defendant will not be substantially prejudiced by the tolling of the statute of limitations, even if true it does not alone permit the Court to ignore the other considerations already discussed. Other courts have dismissed FLSA claims of named plaintiffs who failed to file written consents. See Harkins v. Riverboat Services Inc., 385 F.3d 1099 (7th Cir. 2004) ("[I]f you haven't given your written consent to join the suit, or if you have but it hasn't been filed with the court, you're not a party . . . the rule require[s] written, filed

9

consent"); accord Bonilla v. Las Vegas Cigar Co., 61 F. Supp. 2d 1129 (D. Nev. 1999) (refusing to toll statute of limitation for three named plaintiffs who did not file consents). Statutes of limitations, while subject in some cases to equitable tolling, serve an important purpose in giving a defendant timely notice of the claims against it. In this case, the Court cannot find that the plaintiffs have shown adequate cause to toll the statute of limitations and treat these consents as timely filed.

### B.  Untimely Filing

Although the Court will not toll the statute of limitations for these four claimants for the reasons stated above, it will permit the consents to be filed untimely as of the date that they were submitted to the Court with the plaintiffs' May 2, 2005 motion to file consents untimely and toll the statute of limitations. The FLSA provides for the opt in procedure, but does not specify when a person must opt in to a collective action. See 29 U.S.C. §§ 216(b), 255, 256. The deadline for the filing of consents in this action was set by this Court for March 1, 2002 and later extended to April 1, 2002. Those dates were chosen by the Court in its discretion and were not constrained by any considerations other than the practicalities of the case and setting an appropriate deadline so that discovery could proceed.

This is not the first time that the Court has addressed the issue of whether to accept additional opt in consents to this action. After liability was determined, the plaintiffs moved on July 22, 2004 for the opportunity to notice potential collective action members who had not yet filed consents to join the action. The Court denied plaintiffs' motion, reasoning that although it had adopted a "flexible standard" as to the opt in procedure, the following factors counseled against granting the motion: the plaintiffs' request would result in a delay to damages

discovery, the Court could not predict the possible extent of defendant's additional exposure, and additional persons could opt in to a separate pending action brought by the same plaintiffs' attorneys against the same defendant on the same issues.  September 3, 2004 Memorandum Opinion and Order at 2-3

The concerns cited by the Court in denying plaintiffs' previous motion regarding the potentially lengthy and unwieldy process of both noticing potential claimants and permitting unknown numbers of additional party plaintiffs to join the suit are not present here.  The addition of four opt ins will not substantially prejudice the defendant and is consistent with a broad and flexible reading of the statute and with the Court's discretion in these matters.  See Kelley v. Alamo, 964 F.2d 747, 749-50 (8th Cir. 1992) (holding that "[t]he FLSA should be given a broad reading, in favor of coverage");  Raper v. State of Iowa, 165 F.R.D. 89, 91 (S.D. Iowa 1996) (allowing seven additional prospective plaintiffs to opt in after the determination of liability).  The parties already have conducted damages discovery with plaintiff based on a sampling of the collective action members, so no additional discovery will be necessary.   Allowing four more plaintiffs into the collective action already containing 269 represents only a limited additional exposure for the defendant, given the relatively small number and the fact that the four individuals' damages are already limited if not extinguished by the Court's ruling on equitable tolling.  See Pls.' Mot. at 6, 8 n.4;  see also Defendant's Response to Plaintiffs' Motion to File Consents Untimely and Toll the Statute of Limitations at 3 ("The four claims in question, while large enough to contest, can be absorbed by the total back pay award without significant dilution of the other Plaintiffs' claims."). Each of the four signed and (presumably) returned his consent to plaintiffs' counsel before the April 1, 2002 deadline set by the Court.  Their addition to this

action is consistent with the statute and is within the Court's discretion. While the Court has determined that the four persons whose consents were not timely filed are not entitled to equitable tolling under the law, it will accept their consents as if filed on May 2, 2005.

   Accordingly, it is hereby

   ORDERED that plaintiffs' motion to file consents untimely and toll the statute of limitations [146] is GRANTED in part and DENIED in part.  The Court will not toll the statute of limitations, but will permit the filing of the four untimely consents; and it is

   FURTHER ORDERED that the four notices of consent filed as attachments to plaintiffs' motion are accepted as if filed on May 2, 2005, and the four persons are joined as party plaintiffs in the instant suit.

   SO ORDERED.

                    _____/s/_____
                    PAUL L. FRIEDMAN
DATE:  March 30, 2006           United States District Judge